578 So.2d 999 (1991)
Aida HAYLOCK
v.
JERUSALEM TEMPLE ANCIENT ARABBIE ORDER OF NOBLE OF MYSTIC SHRINE, et al.
No. 90-CA-1754.
Court of Appeal of Louisiana, Fourth Circuit.
April 16, 1991.
Writ Denied June 14, 1991.
*1000 Kurt S. Blankenship, John A. Berry, Curry & Blankenship, New Orleans, for plaintiff-appellee.
Stephen N. Elliott, Michael W. Mallory, Bernard, Cassisa, Saporito & Elliott, Metairie, for defendant-appellant.
Before SCHOTT, C.J., and BYRNES and WARD, JJ.
SCHOTT, Chief Judge.
This case arose out of a slip and fall by plaintiff while she was attending a circus performance produced by Hanneford Circus Inc., at the City of New Orleans Municipal Auditorium. The circus was sponsored by Jerusalem Temple. The principal issue is whether Hanneford's insurer, Empire Indemnity Insurance Company, afforded primary coverage to the City and the Temple for plaintiff's claim.
Plaintiff filed suit against the Temple and the City. They filed third party demands against Hanneford and Empire seeking defense and indemnity as to plaintiff's claims against them. United States Fidelity & Guaranty Company, on behalf of the Temple and the City, settled plaintiff's claim for $25,000, obtaining a dismissal of the principal demand and reserving the rights of the Temple and the City against Hanneford and Empire.
The parties stipulated to the following facts: In February, 1982, the Temple engaged Hanneford to produce circus performances in New Orleans November, 1982. In April, the Temple leased the Municipal Auditorium from the City for the circus. USF & G provided liability insurance coverage to the Temple and City. Empire provided liability insurance coverage to Hanneford. On November 28, 1982, while the circus performance was taking place and as plaintiff was walking on a ramp from the arena to the lobby, she slipped on wet cement and fell, sustaining injuries. Hanneford was not in control of the area where plaintiff fell, it was not responsible for cleaning or maintaining this area, and it was not negligent in failing to prevent the accident. The City alone was responsible for maintaining the area where plaintiff fell. Although not included in the stipulation, it appears that plaintiff was on the way to the restroom when she fell on the ramp and the ramp was wet because of water leaking from the air conditioning system.
The trial court rendered judgment in favor of the Temple, the City, and USF & G against Hanneford and Empire for $12,500 with legal interest from the date of the filing of the third party demand until paid. Hanneford and Empire have appealed.
The basis for the trial court's judgment was the finding that Empire was a primary insurer of the Temple and the City along with USF & G and that the "other insurance" provisions of both policies required each company to contribute an equal share of the amount paid to plaintiff.
By its first assignments of error, Empire contends that the Temple and the City are not additional insureds under its policy, the policy affords no affirmative coverage for plaintiff's injuries, and the policy specifically excludes coverage in any event. In order to address these contentions, the following Empire policy provisions are pertinent:
COVERAGE ABODILY INJURY LIABILITY
* * * * * *
The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
* * * * * *
A. bodily injury or

*1001 B. property damage
... to which insurance applies, caused by an occurrence and arising out of the ownership, maintenance or operation of a carnival and all operations necessary or incidental thereto....
EXCLUSIONS
This insurance does not apply:
* * * * * *
... (o) to bodily injury or property damage arising out of a carnival attraction located at, or the demonstration, existence or sale of any article merchandise or product at, a place other than a carnival site.
II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
* * * * * *
... (e) with respect to an occurrence taking place at a carnival site,
(i) a fair or exposition association sponsoring organization or committee,
(ii) the owner or lessee thereof and
(iii) a municipality granting the named insured permission to operate a carnival.

V. ADDITIONAL DEFINITIONS
When used in reference to this insurance (including endorsements, forming a part of the policy):
"carnival site" means premises owned, rented to or controlled by the named insured upon which a carnival is situated.
The policy contains the following endorsements:
It is agreed that "Sponsors and officers and members of Committees of sponsors, and/or owners of general lessees of land used by the Circus, and/or governmental bodies, agencies thereof and political subdivisions" are added to this policy as additional insureds, but only with respect to occurrences arising out of ownership or operation of the Named Insured's Circus.
CIRCUS LIABILITY ENDORSEMENT
It is understood and agreed that it is the intent of this policy to cover the liability imposed by law upon the Insured for damages on account of accidental bodily injuries including death at any time resulting from the operations of a Circus and all injuries that might take place under their canvas tops to patrons including collapse of grandstands, and all injuries that might be caused by any of the other paraphernalia used in connection with the Circus, excluding Riding Devices of any description.
The trial court concluded that the Temple and the City were "additional insureds" under the provisions of the first endorsement quoted above. Empire argues that the Temple, although qualifying as a "Sponsor" of the circus, and the City as a "governmental body", do not qualify as additional insureds because the ramp where plaintiff fell was not on "land used by the Circus".
Next, Empire argues that even if the Temple and the City can qualify as additional insureds under this endorsement they are still not afforded coverage for plaintiff's injuries. The trial court, in finding coverage, referred to both the insuring agreement of Section I of the policy itself quoted above, i.e., affording coverage for bodily injury "arising out of the ownership, maintenance, or operation of a carnival and all operations necessary or incidental thereto" and the language of the first endorsement relative to additional insureds extending coverage "only with respect to occurrences arising out of ownership or operation of the Named Insured's Circus". Empire contends that a comparison of the language of the policy and that of the endorsement readily demonstrates that the coverage afforded the named insured is considerably broader than that afforded an additional insured.
We do not subscribe to this interpretation. We find that the intention of the *1002 endorsement on additional insureds was to afford them the same protection afforded the named insured. We do not attach any significance to the fact that the language used in the endorsement is not as broad as that found in the policy. We conclude that plaintiff's use of the ramp to go to the restroom was incidental to the operation of the carnival, since the carnival could not effectively operate without providing restrooms as well as ingress and egress for the patrons.
Next, Empire argues that even if the Temple and the City qualify for the same coverage as is afforded the named insureds, there is still no coverage in this case because of the qualifications placed on "Persons Insured" under Section II(e) of the policy limiting coverage for the sponsor and municipality to "an occurrence taking place at a carnival site". Section V of the policy defines "carnival site" as "premises owned, rented to or controlled by the named insured upon which a carnival is situated." Empire contends that this definition does not extend to the place where plaintiff fell because that area was not rented to or controlled by Hanneford, the named insured. When this section is isolated from the rest of the policy and endorsements it seems to confine Empire's coverage to occurrences in the precise area where the circus was being performed. However, when read in the context that coverage is afforded to occurrences arising out of all operations incidental to the operation of a carnival, we conclude that the policy afforded coverage to the Temple and the City in this case. This conclusion is buttressed by the broad language of the "Circus Liability Endorsement" which provides that the intent of the policy is to cover the insured's legal liability for damages on account of accidental bodily injuries resulting from the operations of a Circus. The operations of the circus brought plaintiff to the auditorium and required her to use the ramps in order to reach her seat. The operations of the circus kept her in the auditorium for such a length of time as to require her to move about during the performance. Empire's strained interpretation of its coverage flies in the face of its own stated intent in the Circus Liability Endorsement.
Empire devotes much of its brief to argument that the absence of causal connection between Hanneford's operations and plaintiff's injury precludes indemnity.
Empire argues that plaintiff's fall resulted from the defect on the ramp resulting from the leak in the air conditioning system, all matters under the City's control and unrelated to the performance of the circus. While this may affect the case against Hanneford it has nothing to do with Empire's liability as an insurer of the Temple and the City. That liability is based upon the language of the whole policy including all endorsements which have already been discussed and interpreted adversely to Empire.
Lastly, on the issue of coverage, Empire contends that exclusion (o) denies coverage to the Temple and the City because the injury did not take place at the "carnival site". Our previous discussion of the carnival site issue in connection with the argument about "Persons Insured" above is dispositive of this issue. Suffice it to say, that if exclusion (o) had the effect advocated by Empire, that effect was nullified by the intent of the policy language of the Circus Liability Endorsement.
Empire's next assignments of error concern 1) the right of the Temple and the City to assert claims for indemnity, 2) the right of USF & G to any judgment, and 3) whether Hanneford has any liability to anyone. The first of these has merit. The policy issued by USF & G contains the following subrogation clause:
In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery against any person or organization....
The right to assert a subrogated claim rests with the subrogee. Jones v. Gentilly Dodge, Inc., 397 So.2d 849 (La.App. 4th Cir.1981). Consequently, the judgment in favor of the Temple and the City will be reversed.
*1003 Empire's next contention, that USF & G has no right to a judgment considering the pleadings, is troublesome, but has no merit in the final analysis. Plaintiff did not sue USF & G, only the Temple and the City. Only these defendants asserted third party demands against Empire. The original suit was filed in November, 1983, and the settlement with plaintiff was made in May, 1986. After a great deal of discovery and sparring between the Temple and the City on one side and Empire and Hanneford on the other, Empire, in February, 1989, filed a cross claim against USF & G and its insureds. USF & G answered this demand in September, 1989, becoming a party to the litigation for the first time. At no time did USF & G assert an affirmative claim against Empire. From this, the conclusion would seem to follow that USF & G could not take a judgment against Empire. However, this would lead to the inequitable result of Empire avoiding its obligations under its policy under circumstances where it was fully cognizant of USF & G's involvement in the case and entered into a stipulation with the attorney for USF & G in order to submit the case to the trial court for adjudication. In this stipulation, Empire agreed that USF & G issued the policy to the Temple, USF & G made the settlement on behalf of the Temple and the City, and
21. In reaching a settlement with Mrs. Haylock, USF & G, on behalf of the Jerusalem Temple and the City of New Orleans, reserved their rights against Empire Indemnity Insurance Co. and the Hanneford Circus.
We conclude that the stipulation prevents Empire from contesting USF & G's right to pursue the claim.
Empire's position that the trial court erred in casting Hanneford in judgment has merit. USF & G's only valid claim is for contribution against Empire as a co-insurer of the same insureds. There is no factual or legal basis for a judgment against Hanneford and that part of the judgment will be reversed.
By its final assignment of error, Empire asserts that the trial court erred in awarding interest on the judgment from the date the Temple and the City filed their third party demands. The City filed its third party demand on February 27, 1984, and the Temple filed its on March 26, 1984, bringing Empire into the case for the first time. USF & G made the settlement with plaintiff in May, 1986.
There is no equitable basis for awarding interest on the claim until USF & G put up the money to make the settlement. Furthermore, since USF & G never filed a third party demand against Empire, the language of the judgment does not identify any date from which interest is to run in USF & G's favor. Finally, R.S. 13:4203 which provides for interest on tort judgments from date of judicial demand until paid, is inapplicable because USF & G's action against Empire is not a tort claim. It is a suit on contracts of insurance which contain the "other insurance" provisions requiring contribution between the insurers.
Accordingly, that portion of the judgment in favor of the Jerusalem Temple and the City of New Orleans is reversed and set aside and their third party demands are dismissed. The judgment against Hanneford Circus, Inc., is reversed, and there is judgment in favor of Hanneford dismissing all third party demands against it. The judgment is amended so that there is judgment in favor of United States Fidelity & Guaranty Company and against Empire Indemnity Insurance Company for the sum of $12,500 with legal interest from May 1, 1986, until paid and for all costs incurred by USF & G in these proceedings.
REVERSED IN PART, AMENDED AND AFFIRMED.