' |,GASKINS, J.
In this tort action arising from injuries sustained by a subcontractor’s employee during a store remodeling project, defendant Sears, Roebuck and Company appeals from a judgment granting a motion for summary judgment in favor of defendant Clarendon National Insurance Company and seeks writs from the denial of its motion for summary judgment. For the following reasons, we reverse the judgment of the trial court and grant the writ application.
FACTS
On January 9,1996, Sears entered into a construction contract with Spearman Construction Company, Inc., to remodel Sears’ store at Pecanland Mall in Monroe, Louisiana. The contract between Sears and Spearman provided, in part, that:
Contractor shall, in addition to any other obligation to indemnify Sears, and to the fullest extent permitted by law, protect, defend, indemnify and hold harmless Sears, its Consultant(s), their agents and employees from and against all claims, actions, liabilities, losses (including economic losses), costs, expenses and liens, including but not limited to attorneys’ fees, arising out of any actual or alleged: a) bodily injury, sickness, disease or death, or injury to or destruction of tangible property including the loss of use resulting therefrom, or any other damage or loss arising out of or resulting or claimed to have resulted in whole or in part from any actual or alleged act or omission of the Contractor, any subcontractor, anyone directly or indirectly *1013 employed by any of them, or anyone for whose acts any of them may be liable in the performance of the Work....
The contract further states that the “Work” consisted of “all general contractor responsibilities to complete the remerchan-dise project as described in scope of work, general conditions, and bid proposal attached.”
To satisfy this contractual obligation, Spearman added Sears as an insured under Spearman’s commercial general liability (CGL) policy with Clarendon which included an additional insured endorsement. The endorsement provides in pertinent part:
It is understood and agreed that the following is added as an additional insured hereunder but only as respects liability arising ¿out of the operations of the named insured, and that the inclusion of such additional insured shall not serve to increase the company’s limit of liability as specified in the declarations of this policy. This endorsement applies to additional insureds added, as required by written contract, prior to the occurrence of any losses. [Emphasis added.]
Clarendon issued certificates of insurance for the CGL policy periods of 5/29/95 to 5/29/96 and of 5/29/96 to 5/29/97 which specified that:
Sears, Roebuck <& Co. is hereby named as an additional insured under the General Liability....
The certificate for 5/29/96 to 5/29/97 also gave the following description of “operations/locations/vehicles/special items”:
Sears Store # 1116, Interior renovations to Sears Store located Pecanland Mall, 4800 Milhaven Rd., Monroe, La. 71203.
On August 21, 1996, plaintiff Charles Baker, Jr. was working for McNeer Electric Company installing telephone jacks at the Monroe Sears store. McNeer was a subcontractor on Spearman’s contract to renovate the store, and Baker’s work was part of the renovation project. As Baker was working, a Sears employee was nearby setting up a mannequin as part of a retail display. As the Sears employee put the mannequin on a shelf above Baker, the mannequin fell and struck Baker on the lower back, allegedly causing Baker personal injuries. Although a McNeer employee speculated that the mannequin fell because the Sears employee placed it on a shelf where some of the contractor’s tools might have been located, the cause of the mannequin’s fall was uncertain, and the McNeer employee said that the Sears employee might simply have placed the mannequin too close to the edge of the shelf.
On July 18, 1997, Baker filed suit against Sears and its insurers, and later amended his petition to add Clarendon as a defendant. Clarendon answered the lawsuit, admitting that it provided coverage for Spearman, but denying coverage for Sears or its employees under the facts presented. On October 16, 1998, Sears | ¡¡brought a cross-claim against Clarendon, seeking coverage and a defense from the insurer.
In December 1998, Sears filed a motion for summary judgment seeking a judgment declaring that Clarendon provided coverage for Sears and that Clarendon owed Sears a defense to Baker’s action. On January 5, 1999, Clarendon filed a motion for summary judgment seeking a judgment declaring that it owed no coverage or defense to Sears. In mid-January 1999, the trial court initially granted Clarendon’s motion; however, it gave counsel for Sears the opportunity to produce “additional evidence, if any exists,” and ordered further argument as to whether its decision should be reversed. Thereafter, the court held that its prior ruling should be maintained. In March 1999, the court signed a judgment denying Sears’ motion and granting Clarendon’s motion. The court certified the partial judgment as suitable for immediate appeal, and Sears brought an appeal and a writ application to challenge the lower court ruling. On June *1014 17, 1999, this court consolidated these two matters for decision.
SUMMARY JUDGMENT
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. Traweek v. Jackson, 30,248 (La.App.2d Cir.2/25/98), 709 So.2d 867. Summary judgments are reviewed on appeal de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is' appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Traweek, supra.
Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting |4the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
DISCUSSION
The dispute centers on the application of the endorsement phrase “only as respects liability arising out of the operations of the named insured” to the circumstances of this case. La. R.S. 22:654 provides:
Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.
In Citgo Petroleum v. Yeargin, Inc., 95-1574 (La.App. 3rd Cir.2/19/97), 690 So.2d 154, writs denied, 97-1223, 97-1245 (La.9/19/97), 701 So.2d 169, 170, the third circuit was confronted with a similar question of policy construction. After an explosion caused by Citgo personnel at a Citgo refinery led to numerous tort claims by employees of a subcontractor on-site at the refinery, Citgo sought indemnity and defense from the subcontractor’s insurer. The subcontractor had arranged for Citgo to be covered under the subcontractor’s CGL policy by a certificate of insurance. The CGL policy provided that any party designated by a certificate of insurance would be an “insured” for purposes of the policy, covered to the same extent as the policyholder. The certificate itself stated that the certificate, holder was insured “only with respect to liability arising out of operations performed for such additional insured by the named insured.” Importantly, however, the certificate bore a disclaimer indicating that it did not “amend, extend or alter the coverage” of the original policy. The third circuit held that under La. R.S. 22:654, a certificate of insurance could not “amplify, extend or modify” coverage because it was not a “rider, endorsement or application.” Furthermore, even if the certificate could be considered, the court stated that the disclaimer language rendered ineffective the certificate’s attempt to limit coverage | Jor the certificate holder to liability arising out of operations performed by the named insured (the subcontractor).
In the instant case, the limitation of coverage was contained in the endorsement, not in the certificate. Therefore, although the certificate of insurance in this case bears a similar disclaimer to the certificate in the Citgo case, the limitation of coverage is effective; modifications of coverage contained in endorsements are specifically allowed by La. R.S. 22:654.
In Haylock v. Jerusalem Temple Ancient Arabbie Order of Noble of Mystic Shrine, 578 So.2d 999 (La.App. 4th. Cir. 1991), writ denied, 581 So.2d 690 (La.1991), a dispute arose between the City of New Orleans, a circus promoter and the insurer of the circus. Jerusalem Temple sponsored, and the City hosted, the Hanneford Circus at the New Orleans Municipal Auditorium. A circus patron walking on a wet auditorium ramp on the way to the bathroom slipped, fell and injured *1015 herself. The City alone was responsible for maintaining the ramp. The patron sued the Temple and the City. These defendants sought coverage and defense under Hanneford’s CGL policy. Hanneford’s policy contained an endorsement providing coverage for circus sponsors and facility owners “but only with respect to occurrences arising out of ownership or operation” of the circus. The fourth circuit rejected the insurer’s argument that the accident on the ramp did not arise out of the operation of the circus, stating:
We conclude that plaintiffs use of the ramp to go to the restroom was incidental to the operation of the carnival, since the carnival could not effectively operate without providing restrooms as well as ingress and egress for the patrons.
In Gates v. James River Corporation of Nevada, 602 So.2d 1119 (La.App. 1st Cir. 1992), writ denied, 608 So.2d 175 (La.1992), a contractor’s employee was electrocuted while performing warranty work for the manufacturer of a paper machine. The employee died after touching a welding machine powered by an [^extension cord set up by an employee of the owner of the paper machine. Family members of the employee sued, among others, the owner of the machine. The owner sought coverage and a defense from the insurer of the contractor under an additional insured endorsement to the contractor’s CGL policy. That endorsement provided coverage for the owner “only with respect to liability arising out of (the contractor’s) work for (the owner).” The insurer argued that there should be no coverage because the contractor was working for the manufacturer, not the owner of the machine, and that the manufacturer, not the owner, was paying the contractor. The court rejected this argument and found coverage, stating that the benefit of the contractor’s work flowed ultimately to the owner.
In Saavedra v. Murphy Oil U.S.A., Inc., 930 F.2d 1104 (5th. Cir.1991), a dispute arose between the insurer of a contractor and a principal. Murphy Oil contracted with Lou-Con for Lou-Con to perform contract work at a Murphy refinery. Saavedra was employed by Lou-Con. While securing equipment at the refinery in preparation for Hurricane Gilbert, Saavedra slipped, fell, and injured himself. Saavedra sued Murphy, who ultimately was found to be Saavedra’s statutory employer. Murphy sought a defense to the lawsuit from Lou-Con’s CGL insurance carrier under an indemnity agreement requiring Lou-Con to have Murphy designated as an insured under Lou-Con’s CGL policy. The policy obtained by Lou-Con covered additional insureds (like Murphy) “only with respect to operations performed by or for (Lou-Con).” The court held that because Saavedra’s accident was directly related to Lou-Con’s work, Murphy was covered by the policy and the insurer owed Murphy a defense.
In the instant case, we find that the accident in which Baker was injured arose “out of the operations of the named insured,” i.e., the remodeling of the Sears store. The section of the store where Baker was working was being renovated as part of the remodeling project. Baker was performing electrical work|7which was necessary for the installation of a cash register. Although there were sales being made in that department at other cash registers, that particular area had not yet been released back to Sears. The Sears worker who moved the mannequin while preparing displays was, like Baker, working in conjunction with the remodeling and grand reopening of the store. Consequently, coverage under the policy is afforded to Sears.
Since the Clarendon CGL policy provided coverage for Sears, we further hold that Clarendon owed a duty to defend Sears against the plaintiffs action.
CONCLUSION
The trial court judgment granting summary judgment in favor of Clarendon is *1016 reversed. We grant supervisory writs in No. 32,651-CW and grant summary judgment in favor of Sears. Costs are assessed against Clarendon.
JUDGMENT REVERSED; WRIT GRANTED,