|,KIRBY, J.
Century Vina, Inc. (“Century Vina”) appeals the judgment of the trial court, which granted North Shore Pasta Associates’ [1] (“North Shore”) exception of No Cause of Action. In a consolidated appeal, Century Vina also seeks review of a judgment granting the motion for summary judgment filed by Travelers Property Casualty Co. of America (“Travelers”), and denying the Cross Motion for Summary Judgment filed by Century Vina.

STATEMENT OF THE FACTS

This suit arises from a slip and fall, which occurred in the Century Plaza strip mall parking lot at 1503 Gause Boulevard in Slidell, Louisiana on November 10, 2001. Plaintiffs went to dine at the Semolina Restaurant located there. Semolina is operated by North Shore, and located on property that North Shore leases from Century Vina. While traversing the parking lot on the way into the restaurant Harold Learning fell, allegedly as a result of stepping into an unseen trench drain in the parking lot.
| ^Plaintiffs filed their original petition against Century Vina, the owner of the parking lot where the accident occurred and its insurer, Certain Underwriters at *23 Lloyd’s, London. After receiving certain documentary discovery, plaintiffs amended their petition to add as a defendant Travelers, the insurer of North Shore.
Century Vina then filed a Third-Party Demand against both North Shore and Travelers which, stripped of legal conclusions, pleaded the lease between Century Vina and North Shore and attached a copy of the lease. Century Vina alleges that the third-party defendant, North Shore, is obligated by the terms of the Century Vina/North Shore lease, to hold harmless, protect, defend and indemnify Century Vina. Century Vina also alleges that North Shore breached an agreement to maintain liability insurance in its favor.
In response, North Shore filed a peremptory exception of No Cause of Action and/or No Right of Action, arguing that North Shore has neither liability nor any obligation to indemnify Century Vina under the terms of the lease. Century Vina opposed the exception, arguing that plaintiffs’ damages arose out of North Shore’s business because plaintiffs intended to eat at the Semolina Restaurant.

ACTION OF THE TRIAL COURT

North Shore’s exception was heard on June 25, 2004. In a Judgment dated July 7, 2004, the trial court granted North Shore’s Exceptions. This is the first Judgment from which Century Vina appeals.
|sOn July 13, 2004, the trial court granted Travelers’ Motion for Summary Judgment and denied Century Vina’s Cross Motion for Summary Judgment. This is the second Judgment from which Century Vina appeals.

LEGAL ANALYSIS

We conduct a de novo review of the granting or denial of summary judgment. Wells v. Traynor, 2004-0064, p. 3 (La.App. 4 Cir. 12/1/04), 892 So.2d 21, 24; Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
We also review de novo the granting of the exception of no cause of action because the exception raises a question of law and the lower court’s decision is based only on the sufficiency of the petition. LSA-C.C.P. art. 931; Simon v. Board of Com’rs of Port of Orleans, 2004-0368, p. 4 (La.App. 4 Cir. 5/12/04), 875 So.2d 102, 104.[2] All well pleaded allegations of the petition and any annexed documents Lmust be accepted as true, and any doubt resolved in favor of the petition. Reis v. *24 Fenasci & Smith, 93-1785 (La.App. 4 Cir. 4/14/94), 635 So.2d 1319, 1321.
Prior to analyzing this case, we note that both a lease and an insurance policy are contracts between the parties, and have the effect of law between them. LSA-C.C. art. 2045, et seq., and art. 9, et seq.

DISMISSAL OF NORTH SHORE VIA GRANTING OF EXCEPTION

First we analyze the trial court’s granting of North Shore’s exception of no cause of action. We begin by noting that Section 7.1[3] of the Lease between North Shore and Century Vina makes Century Vina, as owner, responsible for maintenance of the parking lot. Section 7.3 of the Lease gives control of the common areas to the Landlord, i.e., Century Vina. Therefore, the trial court was correct in finding that Century Vina had no right of indemnification under a negligence or tort-based theory.
Next, Century Vina argues that contractual indemnification applies. Article 12 of the Lease is entitled “Indemnity; Liability and Property Insurance.” The relevant provisions state:
12.1 INDEMNITY. Tenant hereby agrees to hold harmless, indemnify and protect and, at Landlord’s option, defend Landlord, his mortgagees, his agents, successors and assigns from all injuries, losses, claims, or damages to any person or property while on the Leased Premises or any other part of the Retail Complex occasioned by any act or omission or negligence of Tenant, or any party from [sic] whom Tenant is responsible. Such indemnity shall include all costs and attorney fees incurred in any such claim, proceeding, or litigation and the defense thereof.
R12.2 TENANT’S LIABILITY INSURANCE. Tenant shall maintain in responsible companies, approved by Landlord, public liability insurance insuring Landlord, and if so requested, Landlord’s mortgagees, as their interests may appear against all claims, demands, or actions for injury to, or death, in an amount of not less than that set forth in Article l.l.u. arising out of any one occurrence and for damage to property in an amount of not less than that set forth in Article l.l.u. arising out of any one occurrence, made by or on behalf of any person, firm, or corporation, arising from, related to, or connected with the conduct and operation of Tenant’s business in the Leased Premises ....
* * *
12.4 GENERAL REQUIREMENTS. All insurance shall be written by responsible companies.... In addition to any and all other rights and remedies available to Landlord under this Lease or by law, Landlord shall also be entitled to recover as damages for such breach, the uninsured amounts of any loss, to the extent of any deficiency in the insurance required by the provisions of this Lease.
* * *
12.6 TENANT’S ADDITIONAL COVENANTS, (a) The Tenant shall not permit any condition to exist not otherwise consistent with Tenant’s permitted use that will either (i) increase the cost of any insurance maintained by the landlord with respect to the Leased Premises or any of the Retail Complex, or (ii) cause or contribute to a decision by the insurer to cancel any such insurance. *25 The Tenant shall pay on demand, as Additional Rent, any increase in insurance cost suffered by the Landlord as a result of the Tenant’s having permitted any such condition to exist. If the Tenant fails to pay such Additional Rent or causes or contributes to a decision by the insurer to cancel any such insurance, the Landlord may exercise any of the rights and remedies granted by the provisions of this Lease or by law, subject to all applicable curative periods available to Tenant. Tenant shall use and occupy the Leased Premises, and use such other portions of the Retail Complex as permitted specifically by the provisions of this Lease, at its own risk and, except for acts caused by the negligence of Landlord, its agents or employees, the Landlord shall have no responsibility or liability for any loss of or 1 ^damage to fixtures, inventory, or other property of Tenant or Tenant’s employees, invitees or customers. The provisions of this paragraph shall apply during the whole of the term of this Lease and during any period prior to the term when Tenant is performing Tenant’s work.
(Emphasis added.)
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The intent of the parties, as reflected by the words of the policy, determines the extent of coverage. La. C.C. art. 2045; Louisiana Ins. Guar. Ass’n. v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763. In deciding whether a contractual right of indemnity exists under this Lease we note La. C.C. art. 2056, a rule that has been a part of our jurisprudence for many years:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
At the outset, we note that this accident occurred in the parking lot. The parking lot is defined in the Lease as a “common area,” under the garde or care of Century Vina. Since the Lease defines the parking lot as the “common area,” then it cannot also be part of the “leased premises,” that is under the garde or care of North Shore.
Century Vina argues that Article 12.2 of the Lease should be read to emphasize the first part of the phrase which states that the accident was “arising |7from, related to, or connected with the conduct and operation of Tenant’s business in the Leased Premises.” Nevertheless, guided by La. C.C. art. 2056, we find the trial court did not commit legal error in limiting the scope of Art. 12.2 by the final quoted prepositional phrase “in the Leased Premises.”
Additionally, Century Vina argues that Article 12.1 of the Lease applies. Article 12.1 limits indemnity to “all injuries, losses, claims, or damages to any person or property while on the Leased Premises or any other part of the Retail Complex occasioned by any act or omission or negligence of Tenant, or any party from [sic] whom Tenant is responsible.” While we admit that differing interpretations could arise, in light of La. C.C. art. 2056, we must again limit the indemnity with the prepositional phrase “on the Leased Premises.” Moreover, the second part of the indemnity that flows from injuries that occur on “any other part of the Retail Complex” is limited by the language that states if the injury is “occasioned by any *26 act or omission or negligence of Tenant.” Since this accident occurred prior to the patronization of the restaurant and since North Shore is not responsible for the care of the parking lot, there is no indemnity-due Century Vina because North Shore is neither negligent nor did it occasion this accident.
Finally, Article 12.1, concerning indemnity, consists of two sentences. The last phrase in the first sentence states “or any party from [sic] whom Tenant is responsible.” The trial court interpreted the phrase to mean that either the Tenant was not responsible for individuals who were injured in the parking lot prior to patronizing the restaurant, or it found the preceding clauses limited the area for | swhich the Tenant had to indemnify Century Vina (“on the Leased Premises”). Additionally, the trial court could have found that the Article 12.1 phrase “occasioned by any act or omission or negligence of Tenant,” required a finding of some negligence on the Tenant to hold North Shore liable for indemnity to Century Vina.
Taking the factual allegations of the Third Party Demand as true and considering the lease attached thereto, we agree with the trial court that Century Vina has no cause of action for contractual indemnity from North Shore for Mr. Learning’s fall in the parking lot.

GRANTING OF TRAVELER’S MOTION FOR SUMMARY JUDGMENT AND DISMISSAL

Travelers’ policy number P-630-503D8280-PHX-01, provides general commercial liability coverage to Semolina, Inc., and Travelers’ policy number PSM-CUP-503D8280-TIL01, provides commercial excess liability (umbrella) insurance to North Shore Pasta Associates, 1993 Limited Partnership, and its restaurant, at 1503 Gause Boulevard, Slidell, Louisiana 70458. The general commercial liability policy provides in relevant part as follows:
SECTION 1-COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY 1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend any “suit” seeking those damages.
| ¡¡The policy also contains a blanket additional insured-owners, lessees or contractors endorsement. The endorsement provides:
1. WHO IS AN INSURED (SECTION II) is amended to include as an insured any person or organization (called hereafter “additional insured”) whom you have agreed in a written contract, executed prior to loss, to name as additional insured, but only with respect to liability arising out of “your work” or your ongoing operations for that additional insured performed by you or for you.
The definition section of the policy provides in relevant part as follows:
Section V Definitions
[[Image here]]
“Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
[[Image here]]
“Your work” means:
a. Work or operations performed by you or on your behalf; or
*27 b. Materials, parts or equipment furnished in connection with such work or operations.
Referencing the aforementioned Lease, one can see that North Shore contractually obligated itself to insure Century Vina “against all claims, demands or actions for injury to, or death ... arising out of any one occurrence, made by or on behalf of any person, firm, or corporation, arising from, related to, or connected with the conduct and operation of the Tenant’s business in the Leased Premises.”
Travelers’ joined with North Shore in arguing that North Shore is only obligated to provide insurance coverage for an accident, which actually occurs inside the leased premises, i.e., Semolina’s Restaurant or one that is occasioned by Tenant’s negligent act or omission.
[inTo fit within the scope of the Blanket Additional Insured Endorsement, Century Vina argues that Milano v.Board of Com’rs Of Orleans Levee Dist., 96-1368 (La.App. 4 Cir. 3/26/97), 691 So.2d 1311; Fleniken v. Entergy Corp., 99-3023, 99-3024 (La.App. 1 Cir. 2/16/01), 790 So.2d 64; and Haylock v. Jerusalem Temple Ancient Arabbie Order of Noble of Mystic Shrine, 578 So.2d 999 (La.App. 4 Cir.1991) support its position that plaintiffs’ injuries allegedly resulting from a fall in a shopping mall parking lot specifically arise out of North Shore’s work.
Fleniken stands for the principle that an exclusionary clause, which bars liability coverage, must be strictly construed. Fleniken, 99-3023, p. 9, 790 So.2d at 70; LeJeune v. Allstate Ins. Co., 365 So.2d 471, 479 (La.1978). Fleniken found the defendant owed indemnity. Nevertheless, Flen-iken is distinguishable because the defendant was operating a truck terminal and parking was essential and critical to its business. Contrary to what Century Vina argues, the lease provisions in that ease were written more favorably in favor of indemnification, e.g., it included a phrase making indemnification owed for “acts or omissions of Lessee, Lesseef’s] agents, employees or business [sic] invitees.” Fleniken, 99-3023, p. 13, 790 So.2d at 72. Here, the link between dining and parking is not as essential as that in the operation of a truck terminal and the provisions of the Lease differ, especially insofar as the Lease states “any party from [sic] whom Tenant is responsible.” We interpret this phrase to mean employees or persons over whom Tenant exercises some authority.
In Milano, we found the slip and fall accident to arise out of the business operations of the business, even though the Orleans Levee Board, and not the restaurateur, had garde of the stairwell. In that ease, we put great weight upon the fact that the restaurateur’s' insurance policy was deemed to be a “broad general Jojcommercial liability policy, while the Orleans Levee Board had a ‘limited policy’.” Also, in that case, we distinguished State Farm Fire & Casualty Co. v. Hartford Ins. Co. of the Southeast, 25,419 (La.App. 2 Cir. 1/19/94), 631 So.2d 30, which stands for the proposition that primary liability for an accident should be placed on the party who is most responsible for the loss and who was in the best position to have prevented it. The Hartford policy encouraged a negligent party to exercise due care.
Nevertheless, the lease at issue in Mila-no is distinguished from the present one. Article 12.1 of the Lease states that indemnity is owed only when “occasioned by any act or omission or negligence of Tenant, or any party from [sic] whom Tenant is responsible.” We, like the trial court, do not find the Tenant to be responsible for its patrons while in the parking lot. Finally, as the accident occurred in an area under the garde of Century Vina and there *28 is no “act or omission or negligence” on the part of North Shore which triggers liability under the Lease, indemnity is not owed to Century Vina and it is not an additional insured.
For the aforementioned reasons, we affirm the trial court’s grant of North Shore’s exception of no cause of action and Traveler’s motion for summary judgment.
AFFIRMED.

. North Shore Pasta Associates — 1993, Limited Partnership.

. The trial court did not distinguish in its Judgment between the exceptions of no right and no cause of action, and appeared to grant both. See Industrial Cos., Inc.v. Durbin, 2002-0665, p. 6 (La.1/28/03), 837 So.2d 1207, 1212-13, viz:
[Ajlthough they are often confused and/or improperly combined in the same exception, the peremptory exceptions of no cause of action and no right of action are separate and distinct. La.Code of Civ. Proc. art. 927(4) and (5). This court has recognized that one of the primary differences between the two exceptions lies in the fact that a frequent focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant, while the focus in the exception of no right of action is on whether the particular plaintiff bs& a right to bring the suit ... [emphasis in original, citations omitted.]
Century Vina unquestionably has a right of action to seek indemnity, as it is the party facing tort liability. We thus conclude the trial court found Century Vina had no cause of action against third party defendant, North Shore.

. Section 7.1 of the Lease defines the Common Areas, 7.2 states tenants have non-exclusive rights, and 7.3 states the Landlord has control of the Common Areas.