790 So.2d 64 (2001)
Wilburn Morris FLENIKEN, II
v.
ENTERGY CORPORATION; TMI Enterprise, Inc.; Safeway Transportation, Inc.; and Zurich American Insurance of Illinois.
TMI Enterprises, Inc.
v.
Zurich Insurance Company.
Nos. 1999 CA 3023 and 1999 CA 3024.
Court of Appeal of Louisiana, First Circuit.
February 16, 2001.
Writ Denied June 15, 2001.
*65 Stacey Moak, Baton Rouge, Counsel for Plaintiff/Appellee Wilburn Morris Fleniken, II.
*66 Arthur H. Andrews, Baton Rouge, Albin A. Provosty, Alexandria, Dan E. West, Margaret Diamond, Baton Rouge, Counsel for Defendants/Appellants TMI Enterprises, Inc. and Clarendon National Insurance Company.
John A. Braymer, Baton Rouge, Counsel for Defendant Entergy Gulf States, Inc.
Thomas L. Gaudry, Jr., Thomas W. Darling, Gretna, Counsel for Defendant/Appellee Safeway Transportation, Inc.
Thomas M. Young, New Orleans, Counsel for Defendant/Appellee Zurich Insurance Company.
John J. Rabalais, Covington, Counsel for Intervenors Safeway Transportation, Inc. and Louisiana Commerce and Trade Association Self Insurers' Fund.
Before: CARTER, C.J., FOIL, and WEIMER, JJ.
WEIMER, Judge.
These consolidated matters and related matters arose from an accident on February 27, 1996, which injured Wilburn Morris "Cheyenne" Fleniken, II when he came in contact with an electrical distribution line owned and maintained by Entergy Gulf States, Inc. (Entergy) and located above the property of TMI Enterprises, Inc. (TMI). Mr. Fleniken filed suit against Entergy; TMI; Safeway Transportation, Inc. (Safeway), lessee of the trailer upon which he was standing at the time of the accident; and Zurich American Insurance of Illinois (Zurich), the company that issued general liability and automobile liability insurance policies to Safeway. After all defendants answered plaintiff's petition, TMI filed cross-claims against Safeway and Zurich for contribution and/or indemnification for all sums representing TMI's liability, if any, to Mr. Fleniken. In a separate cause of action, TMI alleged that it was an additional insured under the Zurich policies. Additionally, TMI filed a petition for declaratory judgment, captioned TMI Enterprises, Inc. v. Zurich Insurance Co., # 449,942, which was consolidated with Fleniken v. Entergy, # 427,218.
From this procedural morass there emanated the two judgments[1] which are the subject of this appeal: the April 28, 1999 judgment rendered in favor of both Safeway and Zurich in TMI's declaratory judgment action and the May 14, 1999 judgment granting Zurich's motion for summary judgment in its favor. TMI perfected appeals of both judgments.

BACKGROUND
TMI owns a 26-acre property located in West Baton Rouge Parish, from which TMI operates a trucking business, a fuel station, a mechanic's shop, a wash-rack, and a video poker casino. In addition, TMI leases office and other building space to various companies, including Safeway. In connection with their lease agreements, the lessee companies have the right to park their vehicles anywhere on the property. TMI also leases parking privileges to several other trucking companies and *67 allows truck-stop and casino customers to use the parking areas.
Pursuant to a written lease, TMI leased to Safeway an office building and half of a wash-rack building. Safeway renovated its portion of the wash-rack building to accommodate the washing of bulk trailers it used in its trucking business. Safeway's use of the wash-rack building had begun shortly before the date of the accident.
The day before the accident, Mr. Fleniken was dispatched by Safeway to pick up one of its bulk trailers from the TMI property and to haul a load from Paxon Polymers in Baton Rouge. Before daylight on February 27, 1996, Mr. Fleniken drove to the TMI property in one of the tractors[2] he owned and used in operating his trucking business. He located the Safeway trailer parked on a concrete pad near the wash-rack building and proceeded to hook it up to his tractor and perform the pretrip inspection. After he inspected the tractor-trailer unit from the ground, he climbed the ladder at the rear of the Safeway trailer for the purpose of checking whether the trailer had been properly cleaned for the assigned haul. He made his way along the top of the trailer in a crouched position and inspected the hatch. After inspecting it, Mr. Fleniken closed the hatch, stood up, and started toward the ladder. His head came into contact with the energized electrical line that was hanging less than six feet above the top of the trailer. The electrical charge passed through his body, knocking him unconscious and causing him to fall from the top of the trailer to the ground.
The appeal by TMI presents the following issues for our determination:
1. Did the commercial general liability insurance policy issued by Zurich afford coverage to TMI for its potential liability resulting from the damages sustained by Mr. Fleniken?
2. Did the commercial automobile liability insurance policy issued by Zurich afford coverage to TMI for its potential liability resulting from the damages sustained by Mr. Fleniken?
3. If TMI is not afforded coverage under either policy, did Safeway breach its lease agreement with TMI by failing to obtain such coverage and did either policy afford coverage to Safeway for its failure to procure valid liability insurance for TMI?
4. Did the lease agreement between TMI and Safeway require that Safeway indemnify and hold TMI harmless for any liability resulting from the damages sustained by Mr. Fleniken?

INSURANCE COVERAGE
The written lease between Safeway and TMI contained an agreement that Safeway obtain liability insurance in the amount of $5,000,000.00 designating TMI as an additional insured in the event an accident were to occur on the property belonging to TMI. Safeway obtained two policies of insurance from Zurich, a commercial general liability insurance policy and a commercial automobile liability insurance policy. The trial court ruled that neither of the policies issued to Safeway by Zurich provided coverage to TMI and that Zurich was entitled to judgment as a matter of law. After the trial court granted the motion for summary judgment filed by Zurich, TMI perfected these appeals, urging that it was entitled to coverage and a defense under either one of the two policies. We review *68 this judgment de novo, for appellate courts use the same criteria as those governing the district court's consideration of whether summary judgment is appropriate. See Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Freyoux v. Estate of Bousegard, 484 So.2d 761, 762 (La.App. 1 Cir.), writ denied, 486 So.2d 753 (1986). Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. Epps v. City of Baton Rouge, 604 So.2d 1336, 1349 (La.App. 1 Cir.1992). Interpretation of an insurance contract is usually a legal question. Dunn v. Potomac Insurance Company of Illinois, 94-2202, p. 6 (La.App. 1 Cir. 6/23/95), 657 So.2d 660, 664. The Louisiana Civil Code defines interpretation of a contract as "the determination of the common intent of the parties." LSA-C.C. art. 2045. The intention of the parties is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical basis to the instrument in its entirety. Coates v. Northlake Oil Co., Inc., 499 So.2d 252, 255 (La.App. 1 Cir. 1986), writ denied, 503 So.2d 476 (1987).
"Automobile liability policies protect against the specific risk of liability `arising out of the ownership, maintenance or use' of vehicles.... Conversely, many other liability policies, including ... commercial general liability policies, expressly exclude coverage for liability `arising out of ... use...' of vehicles." 15 WILLIAM S. MCKENZIE and H. ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE: INSURANCE LAW AND PRACTICE § 65, p. 184 (2nd ed. 1996). In the instant case, the trial court determined that coverage under the commercial general liability insurance policy issued by Zurich was excluded because Mr. Fleniken's accident arose out of the use of a vehicle. In these consolidated appeals, TMI urges that the trial court erred as a matter of law.

Commercial General Liability Insurance Policy:
The record clearly supports the proposition that both Safeway and TMI intended for TMI to be an additional insured under the policy purchased by Safeway as provided in the written contract of lease. To fulfill its contractual obligation to TMI, Safeway purchased the coverage from Zurich through its insurance agent, Michael Beck. Mr. Beck caused to be issued to TMI a certificate of insurance reflecting the coverage mandated by the written contract of lease.
Zurich issued a policy to Safeway providing $5,000,000.00 of coverage for general liability for the named insureds. The policy contained an endorsement entitled "ADDITIONAL INSUREDOWNERS, LESSEES OR CONTRACTORS." The endorsement provides that "[t]hose entities with whom the Named Insured [Safeway] executes a written Contract ... [are] include[d] as an insured ... but only with respect to liability arising out of your [Safeway's] ongoing operations performed for that insured."
As a threshold response to TMI's appeal, Zurich argues that TMI was not an additional insured under the commercial general liability insurance policy because Safeway was not performing any operation for TMI at the time of Mr. Fleniken's accident. Zurich points out that TMI did not own or lease either part of the tractor-trailer unit and did not have an interest in the commodities that were being hauled. Zurich's attempt to have the "performed *69 for" provision of the endorsement exclude TMI reveals the ambiguity of the provision.[3] Zurich's reading of the endorsement is too restrictive. Upon analysis of the relationship between Safeway and TMI, it is apparent that Safeway, as a reasonable insurance policy purchaser, would not have construed the endorsement terms as Zurich suggests.[4]
TMI meets the endorsement's requirement that it is a party to a written contract with Safewaythe relationship between TMI and Safeway was always that of lessor and lessee. Activities that inured to Safeway's benefit, as lessee, inured to TMI's benefit, as lessor. TMI, the lessor of the wash-rack, and Safeway, the lessee of the wash-rack, each had an interest in its use. The inspection performed by Mr. Fleniken was necessary to determine whether the trailer had to be cleaned in the wash-rack.
The facts of the accident meet the endorsement's requirement that TMI's potential liability arose out of Safeway's "ongoing operations." We note the portion of Safeway's ongoing operation being performed by Mr. Fleniken at the time of the accident was directly related to Safeway's use of the wash-rack building it was leasing from TMI. Mr. Fleniken was inspecting the Safeway trailer through the hatch on the roof of the trailer to determine whether it had been cleaned in the wash-rack building sufficiently for the trailer to be used for the assigned haul.[5] Mr. Fleniken's inspection inured to the benefit of TMI by making Safeway's lease of the wash-rack building from TMI a viable portion of its trucking operations. Because of the direct relationship between Mr. Fleniken's performance of his duties as the assigned operator of the tractor-trailer unit and Safeway's use of TMI's premises as TMI's lessee, it can be said that TMI's potential liability arose out of ongoing operations performed for TMI.
Nevertheless, Zurich argues on appeal that Safeway's ongoing actions were not "performed for" TMI. To read the endorsement language, "performed for," so as to exclude Mr. Fleniken's work in the instant case is to restrict unduly the coverage intended by the parties to the insurance contract. If the provision is read as Zurich suggests, TMI would never be covered under the insurance policy; Safeway never hauled commodities for TMI because TMI was not a manufacturer. Thus, Safeway would have paid a premium for the addition of TMI as an insured, but the insurer would have provided no coverage for which it charged the premium. As apparent from the record, Safeway agreed *70 in its written contract of lease to procure liability insurance. TMI required the standard, additional-insured endorsement in order to attain an additional layer of insurance to its own coverage in the event of its liability arising from the operations of Safeway on its property. The fact that the haul was being "performed for" another company did not bar the operation from being "performed for" TMI as well. See Gates v. James River Corporation of Nevada, 602 So.2d 1119, 1121 (La.App. 1 Cir.), writ denied, 608 So.2d 175 (1992).
There is no merit to Zurich's argument that TMI was not an additional insured under the commercial general liability insurance policy.
We now address the trial court's decision that no coverage was afforded because of the following exclusion:
SECTION 1 COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
. . . .
2. Exclusions.
This insurance does not apply to:
. . . .
g. Aircraft, Auto or Watercraft
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
The clause in question is an exclusionary clause which, if applicable, bars liability coverage afforded to the insured, TMI. An exclusionary clause is strictly construed. LeJeune v. Allstate Insurance Co., 365 So.2d 471, 479 (La.1978). With this precept in place, the jurisprudence has consistently required that in order for the harm to arise out of use, the vehicle must be essential to the theory of liability alleged against the defendant. In other words, in order for the automobile use exclusion to apply, the conduct of the insured of which the plaintiff complains must require the use of a vehicle. Manuel v. Luckett, 577 So.2d 203, 207 (La.App. 1 Cir.), writ denied, 580 So.2d 378 (1991).
The issue of the applicability of the exclusion addresses the conduct of the insuredhere, TMI. As such, we focus on the acts of TMI, not the acts of the accident victim, Mr. Fleniken. As owner of the property where the accident occurred, TMI is subject to strict liability for a hazardous condition. The insured's duty was to maintain safe premises without unreasonably dangerous conditions. This duty applies regardless of whether a vehicle was used. The specific duty allegedly breached by the insured does not flow from the use of the vehicle. The specific duty allegedly breached by the insured existed independently of the vehicle. See MCKENZIE and JOHNSON § 65, p. 189. Simply stated, it was not the use of a vehicle by the insured which gave rise to the duty owed and allegedly breached. The Zurich policy affords protection for strict liability as alleged based on the facts of this case because use of the vehicle was not essential to such a theory of liability.
What makes this case difficult to analyze is that the duty under the facts of this case was owed to one standing on a vehicle. Mr. Fleniken may have been using a vehicle owned or rented by an insured, Safeway, but the actions of the other insured, TMI, for which liability was demanded, did *71 not involve the use of a vehicle; thus, the harm did not arise out of the use of a vehicle by TMI. Although the use of the vehicle was a fact of the accident, it was only incidental to the theory of liability alleged by the plaintiff and is immaterial in our interpretation of the exclusion in the Zurich commercial general liability insurance policy. See MCKENZIE and JOHNSON § 65, p. 187, citing Picou v. Ferrara, 412 So.2d 1297, 1298-1300 (La.1982) (the automobile use exclusion of defendant's general liability insurance applied because the use of an automobile by an employee on an errand for his employer was an essential element in the negligent entrustment theory of liability and in the vicarious liability theory for the negligence of the employer's driver). In the instant case, it was the victim's use of the vehicle which was involved in the accident; there was no use of the vehicle by the insured, TMI. The "arising out of ... use" portion of the exclusion applies to the insured's actions, not to the victim's actions.
This court's decision in Manuel, 577 So.2d 203, is illustrative of the coverage issue in the instant case.[6] Manuel was a motorist who sued the Iberville Parish sheriff, a deputy who was driving the unit which struck Manuel's vehicle while the deputy was responding to a radio call, another deputy who dispatched the call, and the insurers. This court held the plaintiff's claim that the deputy driver was not properly trained to respond to an emergency call and was not accompanied in his vehicle by an experienced deputy fell within the automobile use exclusion in the insurance policy involved, as in Picou, 412 So.2d 1297. However, the act of the deputy dispatcher in the sheriff's office in negligently dispatching the call did not constitute use of an automobile within the meaning of the automobile use exclusion. Accord, LeJeune, 365 So.2d 471 (automobile use exclusion did not apply where a sheriff's deputy leading a funeral procession failed to secure an intersection and the hearse was struck by a car proceeding through the intersection; the deputy's failure to guard the intersection was a breach of his law enforcement duties independent of the use of an automobile). See also, Curry v. Iberville Parish Sheriffs Office, 405 So.2d 1387 (La.App. 1 Cir.1981), writs denied, 410 So.2d 1130, 1135 (1982) (automobile use exclusion of sheriff's general liability insurer inapplicable where plaintiff was struck by a car while surveying damage to his car which had been hit by a vehicle driven by a deputy; deputy's failure to secure and protect the scene of the accident between the sheriff's unit and the Curry vehicle did not arise out of the use of the deputy's unit).
In the instant case, the Fleniken petition alleged that TMI, the additional insured under the general liability policy, knew that drivers would be parking under the power lines during hours of darkness and had a duty to warn of a danger located on its property and a duty to install parking pads in a safe location. According to the petition, it was the breach of these duties that caused the accident. Although the accident occurred while Mr. Fleniken was standing on a trailer, the bodily injury was not "arising out of the ... use" of the tractor-trailer unit by the insured, TMI.
Furthermore, in Manuel, 577 So.2d at 208, this court rejected the argument that a claim is either totally covered by an automobile policy or totally covered by a *72 professional liability policy. This court noted that the plaintiff, Manuel, as well as the plaintiff in the case of Frazier v. State Farm Mutual Automobile Insurance Co., 347 So.2d 1275 (La.App. 1 Cir.), writ denied, 351 So.2d 165 (1977), set forth two theories of liability, one of which was encompassed by the automobile use exclusion and one which was not. The excess liability policy, therefore, provided coverage for the accident. It was immaterial to the outcome of the case that there were also two alleged tortfeasors, one of whom was using the vehicle and one of whom was not using a vehicle. Thus, it is immaterial in the instant case that one alleged tortfeasor, Safeway, was using a vehicle, but the other alleged tortfeasor, TMI, was not.
Accordingly, we find as a matter of law that the "arising out of" exclusion in the Zurich commercial general liability insurance policy is not applicable in this case. Thus, TMI is provided coverage under the policy, and we reverse the trial court judgment which provided otherwise.

Automobile Liability Insurance Policy:
Because of our interpretation of the exclusion in the commercial general liability insurance policy, it is unnecessary for us to address the issue of coverage for TMI pursuant to the automobile liability insurance policy.

Duty to Provide Insurance Coverage:
Because coverage for TMI is provided in the commercial general liability insurance policy, the issue of whether Safeway breached its contract with TMI to provide insurance is moot.

INDEMNITY AGREEMENT
On appeal, TMI argues that the following provision in the contract of lease between Safeway, as lessee, and TMI, as lessor, grants to TMI the right of indemnification for liability to Mr. Fleniken that arose because of Safeway's fault:[7]
E. Lessee agrees to do the following, to-wit:
. . . .
b. Indemnify and hold Lessor harmless against all damages and liability arising upon the leased premises, from personal injury, from accident or injury to any person or damage to property arising from [or] occasioned by acts o[r] omissions of Lessee, Lessee['s] agents, employees or business invitees. It is understood and agreed that this paragraph places upon the Lessee the total responsibility to indemnify Lessor from any claims, accidents, damage or injury whatsoever (including attorney fees) occurring upon the leased premises during the term of this lease arising from or occasioned by the acts or omissions of Lessee, Lessee['s] agents, employees or business invitees. Additionally, Lessee will furnish to Lessor, annually, evidence of valid existing liability insurance coverage insuring Lessor, Lessee and Lessee['s] business on the premises herein leased with a policy with minimum limits of $5,000,000.00 for bodily injury and for property damage per occasion. (Emphasis supplied.)
The trial court dismissed TMI's claim against Safeway for indemnity for liability to Mr. Fleniken, finding that the accident did not take place upon the leased premises, thus alleviating any obligation to indemnify. On appeal, TMI argues the trial court erred in making such a restrictive interpretation of the contract of lease so as *73 to exclude the parking areas necessary for the operation of Safeway's trucking business and necessary for the utilization of the buildings and the areas Safeway admits were part of the leased premises. We agree.
The lease contract is the law between the parties in defining their respective legal rights and obligations. Carriere v. Bank of Louisiana, 95-3058, p. 8 (La.12/13/96), 702 So.2d 648, 666. Each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole. LSA-C.C. art.2050; K&M Enterprises of Slaughter, Inc. v. Pennington, 99-0930, p. 3 (La.App. 1 Cir. 5/12/00), 764 So.2d 1089, 1091, writ denied, XXXX-XXXX (6/30/00), 766 So.2d 548.
We are obligated to give legal effect to contracts according to the true intent of the parties. LSA-C.C. art. 2045. The true intent of the parties to a contract is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art. 2046; Woodrow Wilson Construction Company, Inc. v. MMR-Radon Constructors, Inc., 93-2346, p. 3 (La.App. 1 Cir. 4/8/94); 635 So.2d 758, 759, writ denied, 94-1206 (La. 7/1/94), 639 So.2d 1167. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art.2046; Amoco Production Company v. Fina Oil & Chemical Company, 95-1185, p. 11 (La.App. 1 Cir. 2/23/96), 670 So.2d 502, 511, writ denied, 96-1024 (La. 5/31/96), 673 So.2d 1037. In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848; Amoco, 95-1185 at 12, 670 So.2d at 511. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. Id. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. LSA-C.C. art. 2045. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Amoco, 95-1185 at 12, 670 So.2d at 511. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art. 2053; Amoco, 95-1185 at 12-13, 670 So.2d at 511. Whether a contract is ambiguous or not is a question of law. Aycock v. Allied Enterprises, Inc., 517 So.2d 303, 309 (La.App. 1 Cir.1987), writs denied, 518 So.2d 512, 513 (1988). Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Amoco, 95-1185 at 13, 670 So.2d at 512.
Thus, the trial court's interpretation of the lease in the instant case was a mixed question of law and fact requiring the evaluation of the lease and the testimony of the parties to the lease. The trial court admitted parol evidence on the grounds that the terms of the lease regarding leased premises were ambiguous. After a careful review of the testimony, we find the trial court committed manifest error in evaluating the testimony.
Testimony at the trial of the declaratory judgment revealed that the written lease, which was confected in 1995 to procure Safeway's financing of renovations to the *74 wash-rack building, was intended by the parties to memorialize the verbal "lease" that had been in place between Safeway and TMI since approximately 1988; nothing in the written lease changed the prior agreement that Safeway would have use of the entire 26-acre property for parking purposes. It is undisputed that Mr. Fleniken's accident did not occur within the 1.06 acres designated as leased premises in the written lease. The 1.06 acres described in the written lease consisted of the portion of the property occupied by the wash-rack building. As we have previously noted, Mr. Fleniken's actions at the time of his accident and the location of the accident were intricately related to Safeway's use of the leased wash-rack building.
We find the trial court committed manifest error because parking was essential to the business of operating a truck terminal once the wash-rack became operational. Gregory Stewart, the president of Safeway, indicated parking is critical to the business of Safeway. The court held the leased premises consisted of the buildings, but did not consider the operation of the entire trucking terminal. In interpreting the lease, the court found Mr. Stewart was credible, but found the owner of TMI, Louis Vielee, was not credible in responding to his own attorney's questions. However, the trial court erred in applying the law to the facts because the testimony of the two men was consistent. Both testified the trucking terminal could not be operated without the parking facilities provided on the TMI property. Mr. Stewart testified if parking had been denied, he would have looked for another building to lease. Thus, the trial court was manifestly erroneous.
The testimony established that the written lease was confected to aid in securing financing for the wash-rack. The operation of a truck terminal with the wash-rack required parking for vehicles; thus, the lease was not limited to the building. The critical and essential role parking played once the wash-rack was constructed is a compelling reason for concluding the site of the accident was on leased premises. The fact that Safeway did not have exclusive use of the parking spaces is of no consequence; there is no requirement of exclusive use apparent either in the lease or the facts presented here. Safeway agreed to indemnify TMI for damages "arising upon the leased premises" according to the lease. In reviewing Mr. Stewart's testimony in its entirety, recalling he is the witness the court found credible, we are convinced that the leased premises included the parking spaces used because of the type of business operated by Safeway. The trial court simply failed to properly apply the testimony to this particular lease agreement.
The trial court relied on Guidry v. Park Dell Terrace Partnership, 561 So.2d 501 (La.App. 3 Cir.1990). Upon careful analysis, Guidry is distinguishable. In Guidry, the customer of a grocery store lessee brought an action against the shopping center lessor to recover for injuries caused by a slip and fall in the parking lot of the shopping center. The lessor filed a cross claim against the lessee. The court held the parking lot for the shopping center in which the grocery store was located was not part of the "leased premises" within the meaning of the lessee's agreement to hold the lessor harmless from claims for personal injury. In Guidry, certain provisions in the lease showed a clear distinction between the leased premises and the parking lot; there are no such provisions in the Safeway/TMI lease. The parking lot, although obviously important to the tenants of the shopping center, was not the essence of the tenants' business. Also, in Guidry, customers used the parking *75 spaces on the lot; here, the lessee was utilizing the parking. In order to use the wash-rack, the trailer had to be parked on the leased premises. Furthermore, at the time of Mr. Fleniken's accident, the parking space was being used by Safeway for the inspection Safeway required its operators to make. The parking space was not being used by a non-lessee trucker who just happened to park on TMI property for the purpose of using the fuel stop or the casino.
By the clear, unambiguous terms of the written lease, it is apparent that Safeway agreed to indemnify TMI for damages incurred because of accidents caused by Safeway's fault. Safeway did not urge, either in the trial court or in this court, any defense to its obligation to so indemnify TMI other than the "not upon the leased premises" defense. Having found that the accident did occur upon the leased premises, we reverse the judgment of the trial court dismissing TMI's claim and render judgment providing that Safeway is obligated to indemnify TMI for any damages TMI must pay because of Safeway's fault.[8]

CONCLUSION
Accordingly, we reverse that portion of the trial court judgment in the declaratory judgment action which dismissed TMI's cross claim against Safeway and Zurich; we hold TMI is entitled to indemnification from Safeway for any damages which TMI may be legally obligated to pay because of Safeway's fault. We reverse that portion of the judgment in the declaratory judgment action which dismissed TMI's cross claim against Zurich for coverage under the Zurich insurance policies, and we reverse the summary judgment in Zurich's favor which dismissed TMI's cross claim; we hold coverage is provided to TMI as an additional insured under the commercial general liability insurance policy issued by Zurich to Safeway. We assess all costs of this appeal to Safeway and Zurich.
REVERSED.
NOTES
[1] The record is convoluted, but for our purposes it is sufficient to state that appeals numbered 1999 CA 2915 c/w 1999 CA 2916, considered with, but not consolidated with the instant appeals, involve appeals of the same two judgments we consider in this opinion. See opinion issued this date, Fleniken v. Entergy Corp., 1999 CA 2915 c/w 1999 CA 2916, (La.App. 1 Cir. 2/16/01), 780 So.2d 562. Appeals numbered 2000 CA 1824 c/w 2000 CA 1825 arose out of the same incident, but appeal a judgment rendered pursuant to a jury verdict; that judgment reiterates the dismissal of the two parties dismissed in the two judgments we consider in this opinion. See opinion issued this date, Fleniken v. Entergy Corp., 2000 CA 1824 c/w 2000 CA 1825 (La. App. 1 Cir. 2/16/01), 780 So.2d 1175.
[2] In the trucking industry, a tractor is a type of truck with a driver's cab used for towing a trailer.
[3] The determination of whether a contract is clear or ambiguous is a question of law. Watts v. Aetna Casualty and Surety Co., 574 So.2d 364, 369 (La.App. 1 Cir.), writ denied, 568 So.2d 1089 (1990). Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions. LSA-C.C. art. 2050. After applying the other general rules of construction, if an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as understood in the insurance context, in favor of the insured. Billiot v. Terrebonne Parish Sheriff's Office, 98-0246, p. 9 (La.App. 1 Cir. 2/19/99), 735 So.2d 17, 24, writ denied, 99-1376 (La. 7/2/99), 747 So.2d 22.
[4] Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989).
[5] The record reveals Mr. Fleniken found the trailer had not been cleaned. Had the accident not intervened, the trailer would have been taken to the wash-rack building and cleaned before Mr. Fleniken proceeded with making the haul.
[6] The language of the exclusionary clause in Manuel is almost identical to the exclusion clause quoted above; it provides the agreement does not apply to "any bodily injury ... arising out of the ... use ... of (a) any automobile ... owned or operated by or rented or loaned to any Insured ...." Manuel, 577 So.2d at 205-206.
[7] The trial court rendered judgment in a previous motion for summary judgment filed by Safeway, which judgment provided Safeway had no obligation under the lease to indemnify TMI for any liability arising from TMI's own negligence. TMI had no opposition to this judgment, which is not before us on appeal, and which is now a final judgment.
[8] In the companion cases, 2000 CA 1824 c/w 2000 CA 1825, the jury found that TMI was negligent and strictly liable and that Safeway was negligent. Although the jury found 50 percent of the fault attributable to Safeway, the judgment awarded plaintiff only 50 percent of the damages determined by the jury. Thus, TMI was not cast in judgment for any damages attributable to Safeway's negligence. We address the issue of the amount of the judgment in our opinion in the companion cases.