GIULIANO BUBOLA AND ANNETTE BUBOLA
v.
JAMES S. STUTTS AND LISA STUTTS.
No. 2008 CA 0183.
Court of Appeals of Louisiana, First Circuit.
September 12, 2008.
DALE R. BARINGER, BENJAMIN J. B. KLIEN, Counsel for Plaintiffs/Appellees, Giuliano Bubola and Annette Bubola.
W. LUTHER WILSON, Counsel for Defendants/Appellants, James S. Stuffs and Lisa Stutts.
Before: CARTER, C.J., WHIPPLE, and DOWNING, JJ.
WHIPPLE, J.
This matter is before us on appeal by the defendants/lessees, Tames and Lisa Stutts, from a judgment of the trial court denying their reconventional demand for specific performance and enforcement of an option to buy the premises leased from the plaintiffs/lessors, Giuliano and Annette Bubola.
The Bubolas answered the appeal, challenging the trial court's denial of their reconventional demand for unrepaired damages and the lessees' failure to return the property in good condition, as well as the trial court's denial of their request for attorney's fees and additional compensation sought for the period of time that the lessees remained in the premises after service of a notice of eviction.
Additionally, the Stuttses filed peremptory exceptions of prescription and no right of action with this court challenging Mrs. Bubola's right to rely on the defense of relative nullity.
For the following reasons, we affirm the judgment of the trial court, deny the answer to appeal, and deny the exceptions of prescription and no right of action.

FACTS AND PROCEDURAL HISTORY
On December 15, 1991, the Stuttses and Bubolas entered into a lease agreement, whereby the Bubolas agreed to rent a residential property they owned in Baton Rouge to the Stuttses for the amount of $400.00 per month, plus an additional $35.00 per month for liability insurance. The lease provided that the rental agreement was on a month-to-month basis and that the rental payment was due on the 15th day of each month.
The lease also contained a clause that set forth the terms of a discretionary option to sell by the lessor. This portion of the lease, captioned as "Special Stipulations," provided as follows:
Lessor agrees to sell Lessee said premises for $85,000.00. Lessor agrees to finance the loan for the [l]essee at the rate of 81/2 % simple interest per annum using a 25 year amortization basis. The loan may be reduced or paid off in advance at the discretion of the Lessee without penalty. Lessee must give Lessor written intention to purchase said premises within 30 days of his intent to exercise Lessor's option to sell. It is understood that this option to sell by the Lessor is non time binding and may or may not be exercised by the Lessor. Lessor agrees to apply all rents paid by Lessee to the $85,000.00 purchase price should he exercise the option to purchase. Lessee agrees to maintain home owner's insurance sufficient to cover replacement value of the structure in the event of fire or vandalism. Liability will be included in this package. The amount of this insurance cannot exceed $400.00 per year.
Although the parties later disputed the condition of the home at the time the Stuttses moved into the home in 1991, it is undisputed that the Stuttses remained in the home for at least fourteen years, at the specified rental rate of $400.00 per month.
In February of 2005, Mr. Bubola called Mr. Stutts and advised that due to increases in property taxes and insurance costs, he would be increasing the rent on the property to $550.00 per month, but would grant Mr. Stutts the option of purchasing the home for $115,000.00. Mr. Stutts declined the offer, contending it was not in accordance with the option clause of the prior written lease.
Thereafter, Mr. Stints then failed, initially, to pay the increased amount of rent. Instead, through his attorney, Mr. Stutts sent a letter to Mr. Bubola, dated June 29, 2005, advising that the Stuttses desired to exercise the option to purchase the home, as granted by and in accordance with the lease. The letter further indicated that the Stuttses had made one hundred sixty-two monthly payments of $400.00 each, which, in accordance with the lease, were to be applied to the $85,000.00 purchase price of the home. Thus, after applying the rental payments to the purchase price stated in the lease, the Stuttses calculated that $20,200.00 would be due by them at the sale, which, they advised, "will take place before the undersigned thirty days from the date of his receipt of this letter, unless other arrangements are made."
In response, on July 19, 2005, Mr. Bubola sent a written notice to vacate to the Stuttses, wherein he requested that they vacate the leased premises before 12:00 a.m. on July 25, 2005. The notice further stated that the Stuttses "consistent failure to pay rent for the months of January and July of the current year is a breach of the lease" and that their "attempted payment on July 14, 2005 of rent for the months of June and July is rejected as untimely and insufficient in amount." The notice further advised that if the Stuttses did not vacate as requested, eviction proceedings would be instituted.
On August 12, 2005, the Bubolas filed a rule to evict, contending that the 1991 lease provided for a month-to-month term with the rent payable on the fifteenth day of each month, but that throughout their occupancy, the Stuttses had repeatedly failed to make timely rental payments, thereby breaching the 1991 lease. The Bubolas further contended that based on the repeated defaults of the Stuttses over the years since its execution, the 1991 lease had been breached and therefore terminated. The Bubolas also contended in their rule to evict that following the termination of the 1991 lease, the Stuttses had maintained occupancy of the premises based on an oral lease on a month-to-month basis at a rental amount of $435.00 per month until February of 2005, at which time their rent was increased to $550.00 per month, and that they were in arrears for one month's rental payment. The Bubolas alleged that because the Stuttses had failed to make timely rental payments and increased rental payments, they had also breached the oral lease. Lastly, the Bubolas alleged that the Stuttses had failed to comply with the notice to vacate. Accordingly, the Bubolas requested that the court render judgment ordering the Stuttses to vacate the premises.
On September 20, 2005, the Stuttses filed an answer and reconventional demand, seeking a declaratory judgment and judicial decree in their favor recognizing that they "have timely and properly exercised their option to purchase the property and that [the Bubolas] are bound legally to go forward with the sale transaction."
Meanwhile, the parties entered into a "Limited Compromise, Settlement and Mutual Release Agreement" on October 28, 2005, whereby: (1) the Stuttses agreed to vacate the premises by October 31, 2005, and pay unto the Bubolas delinquent rental payments; (2) the parties reserved all other claims; and (3) the Bubolas agreed to dismiss the eviction proceeding upon the Stuttses' compliance with their agreement to vacate the premises by October 31, 2005.
On March 1, 2006, the Bubolas filed an answer to the Stuttses' reconventional demand together with their own "reconventional demand." Therein, the Bubolas identified and listed in detail twenty-nine occasions of late payments and other acts by the Stuttses, which constituted a default of the provisions of the lease. Thus, the Bubolas contended at the time the Stuttses purported to exercise the "alleged option to purchase, [they] were in default under the written lease and consequently, cannot maintain an action seeking to enforce any rights under the written lease[,] including the alleged option to purchase."[1]
Alternatively, the Bubolas contended that even if the written lease somehow remained in effect as of the date the Stuttses exercised the alleged option to purchase, the Special Stipulation clause specifically provided that the "option to sell by the Lessor is nontime binding and may or may not be exercised by the Lessor." Accordingly, the Bubolas contended, they had the sole option of deciding whether or not to sell the property upon receipt of the Stuttses' written notice of intention to purchase the property in June of 2005, and they had elected not to exercise their option to sell.
Lastly, the Bubolas contended that the language in the lease relied on by the Stuttses was insufficient to create a valid option under Louisiana law, inasmuch as the lease did not establish a term within which the option was to be exercised pursuant to LSA-C.C. art. 2620. Specifically, they contended that the alleged option to purchase was invalid or unavailable, because the term for exercising exceeded ten years, pursuant to LSA-C.C. art. 2628.
The two-day trial of this matter commenced on June 1, 2006, and was completed on November 6, 2006.[2] On January 24, 2007, the trial court entered oral reasons on the record in the form of a minute entry. The trial court stated that the Stuttses had attempted to exercise an option to purchase the property on June 29, 2005, by written letter to the Bubolas.[3] The trial court further found that although the Stuttses "were untimely during the term in the payment of several of the rents," the Bubolas acquiesced and accepted payments from the Stuttses upon their return from "forays outside the country, sometimes in several months duration." The trial court then stated that judgment was granted in favor of the defendants.
Concluding that the court had ruled in their favor, the Stuttses, through counsel, prepared and circulated a proposed written judgment, to which the Bubolas objected. On February 21, 2007, the Bubolas filed a memorandum of objections to the Stuttses' proposed judgment, noting that the case had commenced as a summary proceeding, i.e., an eviction proceeding, and that both parties had subsequently filed reconventional demands, which were not sufficiently addressed and disposed of by the trial court in its reasons for judgment. Further, the Bubolas raised the affirmative defense that since Mrs. Bubola had never signed the lease agreement, she could not be cast in judgment, as proposed by the Stuttses, for breach of an alleged agreement to sell immovable property when there was no written agreement with regard to her interest in the property. Additionally, the Bubolas objected to a provision in the proposed judgment, purporting to award a money judgment in favor of the Stuttses and against the Bubolas in the amount of $101,973.00.
In an attempt to clarify its earlier reasons for judgment, on April 26, 2007, the trial court rendered additional oral reasons for judgment, stating, in pertinent part, as follows:
This matter comes before the Court on an application for clarification. The Court and counsel have both engaged in the use of the term "option" resulting from the insertion of that term in the lease agreement by the drafter of the agreement, plaintiff herein. The Court recognizes that this is not the legal option that the law contemplates, inasmuch as the duration was unlimited. Nonetheless, the Court finds that there was a contract between the parties herein in the nature of a lease agreement, as its primary object. Additionally, there was an agreement as between the parties regarding accessories including, but not limited to, improvements by the lessee and an opportunity to purchase the property by the lessee. And, therefore, the Court grants judgment in favor of the defendants.
Thereafter, on May 22, 2007, the trial court denied the initial proposed judgment, writing the following instructions across the judgment: "Counsel please present judgment disposing of all actions [illegible] except rental for term."
On August 2, 2007, a written judgment was signed by the trial court, which stated that judgment was rendered: (1) in favor of the Stuttses and against the Bubolas on the rule to evict for non-payment of rent; (2) in favor of the Bubolas and against the Stuttses on the Stuttses' reconventional demand for specific performance of the option to sell; (3) in favor of the Stuttses and against the Bubolas on the Bubolas' reconventional demand for unrepaired damages and failure to return the leased property in good condition; (4) in favor of the Bubolas awarding them the amount of rent that was past due and rent owed for the period of time the house was in the Stuttses' possession from the filing of the rule to evict until relinquishment of possession; and (5) ordering that the Stuttses compensate the Bubolas in the amount of $2,775.00.
On August 7, 2007, the Stuttses filed a motion for new trial. On September 17, 2007, the trial court rendered oral reasons granting the motion for new trial explaining, "In an abundance of caution, [the court] believes it should grant a new trial for the purpose of correcting the judgment to make certain that the change is one of substance and permissible."
Subsequently, an "Amended Judgment" was signed on September 26, 2007, which incorporated the earlier judgment, but granted the motion for new trial in part. The amended judgment ordered that there be judgment in favor of the Stuttses and against the Bubolas, rejecting the Bubolas' claims for attorney's fees and triple rent sought for the period the Stuttses had remained in the premises after service of the Notice of Eviction. The judgment further ordered that the parties bear their own costs. As to any other relief requested, the motion for new trial was denied.
The Stuttses filed the instant appeal from the September 26, 2007 "Amended Judgment," contending that the trial court erred in failing to enter a judgment enforcing the language of the contract as written, and in failing to render judgment consistent with the trial court's previous findings and oral reasons, as set forth in the minute entries stating that "the Court grants judgment for the defendants."
In response, the Bubolas filed an answer to the instant appeal, contending that the trial court erred in: (1) denying their reconventional demand for unrepaired damages and failure to return leased property in good condition; and (2) denying their claim for attorney's fees and triple rent for the period the Stuttses had remained in the premises after service of the Bubolas' Notice of Eviction.

EXCEPTIONS FILED ON APPEAL
On May 22, 2008, the Stuttses filed peremptory exceptions of prescription and no right of action with this court challenging Mrs. Bubola's right to rely on the affirmative defense of relative nullity, which was raised by Mrs. Bubola in the proceedings below. We find no merit to the exceptions.
Although the Bubolas and the Stuttses appear in these proceedings variously and respectively as plaintiffs and defendants (in the rule for eviction) and in the posture of plaintiffs-in-reconvention and defendants-in-reconvention (in the Stuttses' demand for declaratory judgment recognizing their right to enforce the lease and buy the property under an option to purchase allegedly granted to them) and as plaintiffs-in-reconvention and defendants-inreconvention (in the Bubolas' demand for damages for neglect of the property, unpaid rentals, and triple rent), it is clear from the memorandum in support of the exception of no right of action on the basis that the Stuttses are objecting, based on a purported waiver or by the passage of time, to Mrs. Bubola raising a claim or defense to the Stuttses' demand in their posture as plaintiffs-inreconvention, for declaratory judgment enforcing the lease and their right to purchase. To the extent that the Stuttses, as plaintiffs-in-reconvention, are objecting to the right of Mrs. Bubola, as a named defendant-in-reconvention, to raise an issue or defense, we find the Stuttses have no procedural basis for doing so. Moreover, even if we were to find that the exceptions were procedurally proper, we reject them as meritless.
In doing so, we first note that Mrs. Bubola clearly and undisputedly has an interest in the property at issue and is both a proper party defendant and plaintiff. Moreover, we recognize that an exception is defined as "a means of defense, other than a denial or avoidance of the demand, used by the defendant, whether in the principal or an incidental action, to retard, dismiss, or defeat the demand brought against him." LSA-C.C.P. art. 921. Further, "[t]he function of the peremptory exception is to have the plaintiffs action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." LSA-C.C.P. art. 923. Finally, LSA-C.C.P. art. 927(5) lists as one of the objections which may be raised by the peremptory exception, "No right of action, or no interest in the plaintiff to institute the suit." Accordingly, defendants except to the petitions of plaintiffs, either in the main demand or in an incidental action; plaintiffs cannot "except" to defenses raised by defendants.
Here, the Stuttses, as plaintiffs-in-reconvention, are improperly urging an exception to challenge a defense available to the Bubolas as defendants-inreconvention. Thus, we deny the Stuttses' peremptory exceptions raising the objections of prescription and no right of action, which are improperly urged and meritless. See Fanguy v. Dupre Brothers Construction Company, Inc., 588 So. 2d 1251, 1255 (La. App. 1st Cir. 1991), writ denied, 594 So. 2d 892 (La. 1992).

DISCUSSION
On appeal, the Stuttses contend the trial court erred in failing to render a judgment on their reconventional demand enforcing the language of the lease agreement or consistent with the trial court's previous findings and oral reasons set forth in minute entries. In support, the Stuttses argue that the "Amended Judgment" of the trial court does not conform to the previous reasons for judgment entered into the minute entries of January 24, 2007 and April 26, 2007, which generally concluded that "judgment is granted in favor of the defendants."
While we recognize that a series of oral reasons and judgments were issued herein, we find the judgment ultimately rendered and at issue on appeal to be legally correct, considering the record before us.
To the extent that a conflict exists between the judgment and the written reasons, it is well-settled that the judgment controls. Delahoussaye v. Board of Supervisors of Community and Technical Colleges, XXXX-XXXX (La. App. 1st Cir. 3/24/05), 906 So. 2d 646, 654.[4] Here, the trial court granted the Bubolas' motion for new trial, for the stated purpose "of correcting the judgment to make certain that the change is one of substance and [is] permissible." Thus, we find no merit to the argument that the amended judgment is defective and should be reversed because it conflicts with reasons or judgments previously assigned or rendered by the trial court.
To the extent that the Stuttses argue that the judgment should be reversed on the merits, we likewise find no merit. Considering the "Special Stipulations" section of the lease agreement, The pertinent language of that section of the lease agreement, which gives rise to this litigation, outlines the terms of a purported option to sell by the lessor, then qualifies the lessor's "option to sell" by stating, "It is understood that this option to sell by the Lessor is non time binding and may or may not be exercised by the Lessor." As stated above, the parties do not dispute that the option to sell contained in the lease agreement is insufficient to create a valid option under Louisiana law pursuant to LSA-C.C. arts. 2620 and 2628.[5]
The lease contract is the law between the parties in defining their respective legal rights and obligations. Fleniken v. Entergy Corporation, 99-3023, 99-3024 (La. App. 1st Cir. 2/16/01), 790 So. 2d 64, 73, writs denied, XXXX-XXXX, XXXX-XXXX (La. 6/15/01), 793 So. 2d 1250, 1252. Each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole. LSA-C.C. art. 2050; K & M Enterprises of Slaughter, Inc. v. Pennington, 99-0930 (La. App. 1st Cir. 5/12/00), 764 So. 2d 1089, 1091, writ denied, XXXX-XXXX (La. 6/30/00), 766 So. 2d 548.
We are obligated to give legal effect to contracts according to the true intent of the parties. LSA-C.C. art. 2045. Fleniken v. Entergy Corporation, 790 So. 2d at 73. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Amoco Production Company v. Fina Oil & Chemical Company, 95-1185 (La. App. 1st Cir. 2/23/96), 670 So. 2d 502, 511, writ denied, 96-1024 (La. 5/31/96), 673 So. 2d 1037. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art. 2053; Amoco Production Company v. Fina Oil & Chemical Company, 670 So. 2d at 511. Whether a contract is ambiguous or not is a question of law. Fleniken v. Entergy Corporation, 790 So. 2d at 73. However, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Amoco Production Company v. Fina Oil & Chemical Company, 670 So. 2d at 512.
At the trial below, the Bubolas argued that the "Special Stipulations" section of the lease is ambiguous and that parole evidence should be admitted to determine the intent of the parties. The trial court agreed and allowed testimony as to the parties' intent.[6] Thus, the record reflects the following testimony and evidence by the parties.
Mr. Bubola stated at trial that he and Mr. Stutts discussed the terms of the lease in some detail before Mr. Stutts had the lease prepared. Mr. Bubola testified, "I was going to rent the house to him with an option to buy, but I never committed myself to that, if he was going to live to certain conditions that we agreed upon orally and in writing." Mr. Bubola further testified that he specifically instructed Mr. Stutts to include a statement providing him with the option to sell. He explained that if Mr. Stutts was not keeping current on his obligations under the lease or holding up to the oral agreement that the lease was for two or four years while Mr. Stutts was attending college, he was never going to sell him the house. He candidly explained that "[he] was never under the obligation to sell him the house." Mr. Bubola was adamant in his testimony that his agreement and understanding was that as the lessor, he was the one who had the option to decide whether or not to sell the property.
Mrs. Annette Bubola likewise testified that she never agreed to sell her interest in the home to the Stuttses, that she specifically advised Mrs. Stutts that they were only renting the house and were not buying it, and that it was not her intention to sell the house to them.
Mr. Stutts agreed that he and Mr. Bubola discussed the terms of the lease before it was prepared, and acknowledged that Mr. Bubola had allowed him to lease the property and to have the option to purchase the property while he was in college. He contended, however, that through the option to sell as stated in the lease, the Bubolas made a revocable offer of sale that was never revoked. Mr. Stutts testified that Mr. Bubola never complained about his late rental payments and never told him that he was withdrawing the offer to sell the house. Mr. Stutts further testified that, in fact, the Bubolas asked him several times when he was going "to get the house in [his] name." Mrs. Lisa Stutts likewise testified that at no time did Mr. or Mrs. Bubola tell them they were not going to fulfill the terms of the lease.
The "Special Stipulations" section at issue in the lease agreement provides, "It is understood that this option to sell by the Lessor is non time binding and may or may not be exercised by the Lessor." (Emphasis added.) After concluding that this sentence created an ambiguity in the lease, the trial court admitted parole evidence to determine the intent of the parties in entering into the lease agreement. Considering the conflicting testimony of the parties, the trial court obviously credited the testimony of the Bubolas over that of the Stuttses in granting judgment rejecting the Stuttses' demand for specific performance for an unrevoked option to purchase,
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989). On review, the issue is not whether the trier of fact's determination was right or wrong, but whether it was reasonable and supported by the record. Bonin v. Ferrellgas, Inc., XXXX-XXXX (La. 7/2/04), 877 So. 2d 89, 94. When factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So. 2d at 844. Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So. 2d at 844.
Considering the conflicting testimony of the parties concerning their intent in the lease agreement at issue, we find no error in the trial court's reasonable and amply supported determination that the Stuttses were not entitled to specific performance enforcing a right to purchase under the lease agreement. Thus, we find the trial court correctly denied these claims.[7]
Accordingly, we find no merit to this assignment of error.

ANSWER TO APPEAL
In their answer to appeal, the Bubolas contend that the trial court erred in denying their reconventional demand for unrepaired damages and expenses incurred or owed for failure to return the leased property in good condition. The Bubolas argue they are entitled to damages in the amount of $50,000.00, which they allege represents the difference between the fair market value the house should have garnered, absent the damages resulting from the Stuttses' neglect ($165,000.00) and the actual sale price of the house ($115,000.00).[8]
In considering these claims, the trial court reviewed photographs of the premises introduced into evidence and further heard the conflicting testimony presented by the Stuttses and Bubolas as to the condition of the home at the time the Stuttses moved into the home and fourteen years later, when the Stuttses were evicted from the home. Considering the conflicting evidence and testimony, we are unable to say the trial court erred in its evaluations of credibility and inferences of fact which are reasonable and supported by the record. Thus, we decline to disturb them on review. See Rosell v. ESCO, 549 So. 2d at 844. We find no error in the trial court's denial of the Bubolas' reconventional demand for unrepaired damages and failure to return the leased property in good condition. Moreover, even if we were to find error in the trial court's determination, the Bubolas failed to present any evidence establishing the fair market value of the house, or the monetary value for the alleged damage to the home, or the costs of any necessary repairs required to improve the condition of the home. This assignment of error also lacks.
The Bubolas further contend that the trial court erred in denying their claim for attorney's fees and additional compensation of triple the monthly rent for the period of time that the Stuttses remained in the premises after service of the Notice of Eviction under the provisions of the lease. The Stuttses were served with the Notice of Eviction on July 19, 2005, and did not vacate the premises until October 31, 2005.
In support of a claim for attorney's fees, the Bubolas argue that the lease provides "for attorney fees to the landlord for the expenses incurred in evicting the tenant." The Bubolas also cite the following clause in the lease agreement:
At the expiration of this lease or at its termination for other causes, Lessee is to immediately surrender possession by actual delivery of all keys to Lessor. Should Lessee fail to deliver such possession he consents to pay as liquidated damages three times the rent per day for each [day] of his failure to do so, with attorney's fees and all costs.
The Bubolas contend that service of the Notice to Vacate upon the Stuttses on July 19, 2005 constituted the "expiration" or "termination" of the lease and was sufficient to invoke enforcement of the liquidated damages clause above. We disagree.
The lease does not define "expiration" or "termination"; nor does the lease specify what event will trigger the invoking of this provision. Moreover, we are not convinced from our reading of the lease agreement that the parties' attempts to resolve their competing interpretations of the lease agreement, which culminated in the eventual eviction of the lessees, constitute the "expiration" or "termination" of the lease. Thus, we find no error in the trial court's ruling rejecting these demands.
As the record shows, in February of 2005, Mr. Bubola advised Mr. Stutts that he would be increasing the amount of the monthly rent to $550.00 per month. Subsequently, by letter dated June 29, 2005, Mr. Stutts' attorney advised Mr. Bubola that the Stuttses wished to exercise their alleged right to purchase the home in accordance with their interpretation of the "Special Stipulations" section of the lease agreement. Thus, the Bubolas were aware that the parties had conflicting interpretations of the lease and the option-to-sell clause prior to (and after) the July 19, 2005 service of the Notice to Vacate. Given the contested positions of the parties, and provisions of the lease agreement, including the option to sell set forth in the "Special Stipulations" section of the lease agreement, we find that the trial court correctly rejected the Bubolas' claim for an award of attorney's fees and additional compensation of triple rent.
Accordingly, we find no merit to these assignments of error.

CONCLUSION
For the above and foregoing reasons, the September 26, 2007 amended judgment of the trial court is affirmed. The Exceptions and Answer to Appeal are denied. Costs are assessed one-half each to the appellants and appellees.
AFFIRMED.
Downing, J., dissents and assigns reasons
"The Louisiana Civil Code has been construed to prohibit conditional sales under which passage of title is postponed until payment of the price." Seals v. Sumrall, 03-0873, p. 4 (La.App. 1 Cir. 2004), 887 So.2d 91, 94.
The parties agreed to a price and terms, and the seller attempted to retain title. Historically, this would have resulted in a sale because conditional sales of immovable property were prohibited under the Civil Code.
Rather than apply this long standing legal principle, the First Circuit has applied the statutorily created exception of bond for deed contracts to agreements that clearly were prohibited conditional sales. See Smith v. Miller, 06-1049 (La. App. 1 Cir. 3/23/07), 953 So.2d 206.
Although this author disagreed with Smith v. Miller, we were obliged to follow it in H.J. Bergeron, Inc. v. Parker, 06-1855 (La.App. 1 Cir. 6/8/07), 964 So.2d 1075. See Id., 06-1855, p. 3 n.2, 964 So. 2d at 1076 n.2.
This panel should either find that this agreement is a prohibited conditional sale, which should result in a sale of the immovable, or it should follow Smith v. Miller.
NOTES
[1] The Bubolas alleged that they had suffered additional damages to their property due to the Stuttses' neglect and failure to keep the Bubolas informed of the condition of the property, and had removed appliances belonging to the Bubolas from the premises and failed to inform the Bubolas of these alterations to the premises in violation of the lease.

The Bubolas also claimed the Stuttses had violated the lease by: (1) failing to properly maintain the premises, thus rendering them liable for the cost of repairing the damages; (2) failing to properly notify the Bubolas either orally or in writing of leaks in the roof and other damage to the property in a timely manner, and, thus, causing additional damages to the property by their neglect in failing to keep the Bubolas informed about the condition of the premises, rendering them liable for damages and repairs, and reconditioning of the premises for use by another tenant or sale on the open market; (3) failing to obtain written permission prior to making alterations to the leased premises; and (4) refusing or failing to vacate the premises, thus obligating the Bubolas to file a rule to vacate. The Bubolas also sought attorney's fees incurred in the prosecution of their claims against the Stuttses.
[2] On June 22, 2006, the Stuttses filed a motion to amend the pleadings and a second amended petition, wherein they additionally alleged that the Bubolas had fraudulently induced them to enter into the lease agreement, for which they sought attorney's fees. On the second day of trial, counsel for the Bubolas objected to the second amending petition, and the trial court conducted a contradictory hearing on the matter. After hearing argument of counsel, the trial court granted the Bubolas' motion to strike the Stuttses' amending petition.
[3] On appeal, the parties concede that the purported "option to sell," as stated in the lease agreement, did not satisfy the requirements of Louisiana law, as it did not comply with the codal requirements applicable to an option affecting immovable property.
[4] On appeal, we review judgments, as opposed to reasons for judgment. Huang v. Louisiana State Board of Trustees for State Colleges and Universities, 99-2805 (La. App. 1st Cir. 12/22/00), 781 So. 2d 1, 5.
[5] Specifically, LSA-C.C. article 2620 sets forth the requirements for an option to buy or sell:

An option to buy, or an option to sell, is a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time.
An option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.
Louisiana Civil Code article 2628 further provides, in part, that "An option or a right of first refusal that concerns an immovable thing may not be granted for a term longer than ten years."
[6] The trial court's finding that the lease agreement was ambiguous and its subsequent decision to allow parole evidence to determine the intent of the parties was not challenged on appeal.
[7] As noted in footnote 6, the parties did not challenge the admission of parole evidence to determine the parties' intent. However, based on our examination of the lease as a whole, we find no ambiguity that required the admission of parole evidence. Thus, even in the absence of the parole evidence considered by the trial court, the judgment correctly denied the Stuttses' request for specific performance based upon the clear and unambiguous terms of the lease.
[8] On April 12, 2006, the Bubolas executed a "Sale With Mortgage," whereby they sold the property and home to a third party for the sum of $115,000.00.